UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHOOL BRENNO SANTOS MENEZES,<br>　　　Petitioner,<br><br>　　　v.<br><br>MICHAEL NESSINGER, *Warden, Donald W. Wyatt Detention Facility*; DAVID WESLING, *Field Office Director, ICE Boston*; DAVID VENTURELLA,[1] *Acting Director, U.S. Immigration and Customs Enforcement*; U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; TODD BLANCHE, *Acting Attorney General of the United States*,<br>　　　Respondents. | No. 26-cv-299-JJM-AEM |

## ORDER

Johool Brenno Santos Menezes has filed a petition for writ of habeas corpus in which he alleges that he is being unlawfully detained by Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1225(b) ("Section 1225(b)"). ECF No. 1 at 5. He claims that his detention is instead governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), and that he is entitled to a bond hearing before an immigration judge ("IJ"). *Id.* at 2. The Government counters, arguing that Mr. Santos Menezes's detention is governed by neither Section 1225(b) nor Section 1226(a). ECF No. 5 at 2. Instead,

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Venturella has been substituted for Todd Lyons as the Acting Director of U.S. Immigration and Customs Enforcement.

the Government contends that Mr. Santos Menezes's detention arises under 8 U.S.C. 1231(a) ("Section 1231(a)") because he is subject to a reinstated order of removal. *Id.* The Government therefore argues that Mr. Santos Menezes is subject to mandatory detention and that he is not entitled to a bond hearing. *Id.*

For the reasons stated below, the Court DENIES WITHOUT PREJUDICE Mr. Santos Menezes's petition and will permit him to file an amended petition.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

"'The government's power to detain an immigrant must be grounded in a specific provision' of the Immigration and Nationality Act ('INA')." *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *1 (D.R.I. Jan. 21, 2026) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018)). Three statutory provisions authorize the Department of Homeland Security ("DHS") to detain noncitizens both before and after they have been ordered removed from the United States. All three are relevant for the purposes of the present petition.

### 1. Detention Authority Under Section 1225(b)

Section 1225(b) applies to "applicants for admission" who are generally encountered "at the Nation's borders and ports of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). An "applicant for admission" is defined as a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Id.* (quoting 8 U.S.C. § 1225(a)(1)).

The Supreme Court has recognized two types of applicants for admission: "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* As relevant

here, noncitizens covered by Section 1225(b)(1) are normally subject to expedited removal proceedings, meaning they are "ordered removed 'without further hearing or review.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

Section 1225(b)(1) primarily applies to those noncitizens who are deemed "inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). It also applies to certain other noncitizens designated by the DHS Secretary in his discretion.[2] *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). One such designation extended expedited removal to "persons who, within fourteen days of arriving in the United States, are encountered within 100 air miles of a land border." *Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *2 (D.C. Cir. Nov. 22, 2025) (per curiam); *see* Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). By contrast, Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(2)(A), (B)).

Both Section 1225(b)(1) and Section 1225(b)(2) authorize the detention of certain applicants for admission. *Id.* Detention under these statutory provisions is mandatory, *id.* at 299, 302, and they do not guarantee any right to a bond hearing, *id.* at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about

---

[2] Though the statute refers to the "discretion of the Attorney General," this authority now belongs to the DHS Secretary. *See Thuraissigiam*, 591 U.S. at 109 n.3 (explaining that 6 U.S.C. § 251(2) transferred the authority over "[t]he detention and removal program" to DHS).

bond hearings."). However, if a noncitizen in expedited removal proceedings "'indicates either an intention to apply for asylum' or 'a fear of persecution,' the immigration officer 'shall refer the [noncitizen] for an interview by an asylum officer.'" *Thuraissigiam*, 591 U.S. at 109 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(ii)). "The point of this screening interview is to determine whether the applicant has a 'credible fear of persecution.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(v)). This amounts to a showing of a "significant possibility" that the noncitizen would be eligible for asylum—not a showing that the noncitizen is in fact eligible for asylum. *Id.*

"If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Id.* at 110 (citing 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii)). "If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination." *Id.* (citing 8 C.F.R. § 208.30(e)(8)). "If the supervisor agrees with it, the applicant may appeal to an [IJ], who can take further evidence and 'shall make a de novo determination.'" *Id.* (quoting 8 C.F.R. § 1003.42(c), (d)(1)); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

With respect to detention, the Supreme Court has stated that "[a]pplicants 'shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.'" *Id.* at 111 (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)). In addition, "[a]pplicants who are found to have a credible fear may also be detained pending further consideration of their asylum

4

applications." *Id.* (citing 8 U.S.C. § 1225(b)(1)(B)(ii)); *see also Jennings*, 583 U.S. at 287–88.

## 2.    Detention Authority Under Section 1226(a)

A separate provision of the INA, Section 1226(a), authorizes the Government "to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings. . . ." *Jennings*, 583 U.S. at 289 (emphasis added).  This provision is often called the "discretionary detention provision" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the [DHS Secretary][3] . . . pending a decision on whether the [noncitizen] is to be removed from the United States."  8 U.S.C. § 1226(a); see *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021).

Noncitizens detained under Section 1226(a) may be released on bond or conditional parole.  *See* 8 U.S.C. § 1226(a)(2).  Indeed, at the outset of detention, a Section 1226(a) detainee has a due process right to request a bond hearing before an IJ at which the burden is on the Government to prove that detention must continue either because the detainee: (1) poses a danger to the community by clear and convincing evidence; or (2) poses a flight risk by a preponderance of the evidence.  *See Hernandez-Lara*, 10 F.4th at 41.

---

[3] Again, the Attorney General is substituted for the DHS Secretary.  *See Thuraissigiam*, 591 U.S. at 109 n.3.

### 3.    Detention Authority Under Section 1231(a)

Under Section 1231(a), "Congress has created an 'expedited removal process' for noncitizens who reenter the United States unlawfully after having previously been removed." *G.P. v. Garland*, 103 F.4th 898, 900 (1st Cir. 2024) (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 529-30 (2021)).  This provision of the INA authorizes DHS to reinstate a prior order of removal against a noncitizen found to have reentered the United States without authorization after having previously been removed pursuant to an order of removal.  *See* 8 U.S.C. § 1231(a)(5); *see also Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *1 (D.R.I. Nov. 26, 2025).

Once the prior order has been reinstated, DHS must remove the noncitizen within a 90-day "removal period."[4]  *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(A)).  Noncitizens are subject to mandatory detention during this 90-day removal period.  *Id.* (citing 8 U.S.C. § 1231(a)(2)).  Generally speaking, if the noncitizen is not removed within the 90-day removal period,[5] then they "shall" be released "subject to supervision under regulations prescribed by the [DHS Secretary]."[6]  8 U.S.C. § 1231(a)(3).

---

[4] The "removal period" begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final," (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," and (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." *Mavungo-Raymond*, 2026 WL 161358, at *2 (quoting 8 U.S.C. § 1231(a)(1)(B)).

[5] Certain noncitizens can, however, be detained beyond the 90-day removal period if they meet certain enumerated criteria.  *See* 8 U.S.C. § 1231(a)(6).

[6] Again, the Attorney General is substituted for the DHS Secretary.  *See Thuraissigiam*, 591 U.S. at 109 n.3.

DHS's own regulations set out the process for reinstating an order of removal. *See Guzman Chavez*, 594 U.S. at 530. Under these regulations, a DHS official must: (1) obtain the noncitizen's prior order of removal; (2) confirm the noncitizen's identity; (3) determine whether the noncitizen's reentry was unauthorized; (4) provide the noncitizen with written notice of its determination; (5) allow the noncitizen to contest that determination; and (6) reinstate the order of removal. *See id.* (citing 8 C.F.R. §§ 241.8(a)–(c), 1241.8(a)–(c)). Notably, a noncitizen who has a prior order of removal reinstated "has no right to a hearing before an [IJ] in such circumstances." 8 C.F.R. § 241.8(a); *see also* 8 C.F.R. § 1241.8(a).

## B. Factual and Procedural Background

The facts are disputed.

### 1. Mr. Santos Menezes's Assertions

According to Mr. Santos Menezes, he is a native and citizen of Brazil. ECF No. 1 at 1. He claims to have arrived in the United States in or around 2017 without inspection and states that he has resided continuously in the New England area for the last nine years. *Id.* at 1, 4.

Mr. Santos Menezes asserts that, on or about May 11, 2026, ICE officers arrested him after he appeared for a hearing on two misdemeanor charges[7] at the Waltham District Court in Waltham, Massachusetts. *Id.* at 4. He was later

---

[7] The Government informs the Court that the misdemeanor charges are for destruction of property and trespassing, *see* ECF No. 5 at 1 n.1, but Mr. Santos Menezes avers that those charges have since been dismissed. *See* ECF No. 1 at 4.

transferred to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he remains today. *Id.* at 1.

In his petition, Mr. Santos Menezes asserts that his detention is governed by Section 1226(a), the discretionary detention statute, and that he is therefore entitled to a bond hearing before an IJ. *Id.* at 2.

### 2.    The Government's Assertions

The evidence produced by the Government tells a markedly different story. First, the Government has produced a document, demonstrating that Mr. Santos Menezes had an expedited order of removal entered against him in 2017 pursuant to Section 1225(b)(1). *See* ECF No. 5-1 at 2 (displaying Mr. Santos Menezes's "Notice and Order of Expedited Removal").

The Government has also submitted evidence, suggesting that once he was placed in expedited removal proceedings, Mr. Santos Menezes expressed "either an intention to apply for asylum" or "a fear of persecution." *See Thuraissigiam*, 591 U.S. at 109; 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii)). The Government's evidence consists of an order from an IJ in the Los Fresnos, Texas Immigration Court, who found that Mr. Santos Menezes had not established a "significant possibility" that he would be eligible for asylum relief. *See* ECF No. 5-2 at 2 (displaying IJ's order). As such, the IJ ordered that the case be returned to DHS for Mr. Santos Menezes's removal from the United States. *Id.*

A third piece of evidence submitted by the Government is a Notice, verifying that Mr. Santos Menezes was removed from the United States on July 6, 2017. *See*

ECF No. 5-3 at 2 (displaying Mr. Santos Menezes's "Notice to Alien Ordered Removed/Departure Verification"). Mr. Santos Menezes's photograph, signature, and fingerprints are appended to the Notice. *Id.*

The Government's final piece of evidence is a "Notice of Intent/Decision to Reinstate Prior Order,"[8] demonstrating that Mr. Santos Menezes is in fact subject to a reinstated order of removal. *See* ECF No. 5-4 at 2 (displaying Mr. Santos Menezes's "Notice of Intent/Decision to Reinstate Prior Order"). The Notice is dated May 11, 2026. *Id.* In the "Acknowledgment and Response" portion of the form, there is: (1) a checked box indicating that Mr. Santos Menezes did "not wish to make a statement contesting this determination"; and (2) a signature line indicating that Mr. Santos Menezes "refused to sign" the form. *Id.*

## II.    DISCUSSION

The only question that the Court must decide is whether Mr. Santos Menezes's detention is governed by Section 1226(a) or Section 1231(a).[9] This is a fairly easy question to answer since the Government has submitted a plethora of evidence that Mr. Santos Menezes was ordered removed from the United States in 2017, *see* ECF No. 5-1; ECF No. 5-2; ECF No. 5-3, and that, now that he has reentered the country, he is subject to a reinstated order of removal, *see* ECF No. 5-4.

---

[8] This Notice is also called a Form I-871. *See Ponta-Garca v. Ashcroft*, 386 F.3d 341, 342 (1st Cir. 2004).

[9] Both parties concede that Mr. Santos Menezes is not subject to detention under Section 1225(b). *See* ECF No. 1 at 5; ECF No. 5 at 2.

9

As such, because DHS reinstated his prior order of removal, Mr. Santos Menezes is currently subject to a mandatory 90-day period of detention under Section 1231(a).  *See Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).  That 90-day period began on May 11, 2026, which is the date DHS entered the reinstated order of removal, making it "administratively final."  ECF No. 5-4 at 2; *see* 8 U.S.C. § 1231(a)(1)(B)(i); *Guzman Chavez*, 596 U.S. at 534-35 (holding that removal orders are "administratively final" once DHS has "reinstated [them] following unlawful reentry").[10]  The analysis does not end there, however.

In his Reply, Mr. Santos Menezes appears to suggest that DHS may not have complied with 8 C.F.R. § 241.8 when it reinstated his prior order of removal.  *See* ECF No. 8 at 2-3.  As Mr. Santos Menezes points out, the record only shows "the agency's checked form" on its Notice of Intent/Decision to Reinstate Prior Order, *see* ECF No. 5-4 at 2, but "[i]t does not have any declaration from [DHS] explaining what [Mr. Santos Menezes] was told, whether he understood the legal effect of reinstatement, whether he attempted to contest the determination, or whether he expressed fear of return to Brazil."  ECF No. 8 at 2.

Mr. Santos Menezes also argues that DHS may not have complied with another one of its regulations, 8 C.F.R. § 208.31.  *Id.*  This regulation requires DHS to provide a noncitizen subject to a reinstated order of removal with a reasonable-fear screening

---

[10] Like in *Guzman Chavez*, "[t]he other two triggers for the removal period—a court order lifting a stay and the release from non-immigration detention or confinement—do not apply here."  594 U.S. at 533 n.5 (citing 8 U.S.C. § 1231(a)(1)(B)(ii)–(iii)).

if they express fear of returning to their country of removal. *See* 8 C.F.R. § 208.31. Mr. Santos Menezes is correct in noting that the record "is silent on whether that process has occurred, whether Petitioner was asked about fear, whether he expressed fear, or whether DHS intends to remove him before that safeguard is completed." ECF No. 8 at 2.

So, while Mr. Santos Menezes's request for release must be denied because he is subject to mandatory detention under Section 1231(a), the Court will deny the petition without prejudice and permit him to file an amended petition if he can demonstrate that DHS has failed to comply with the procedures enumerated in 8 C.F.R. § 241.8 and 8 C.F.R. § 208.31. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("[DHS], like any agency, 'has the duty to follow its own federal regulations.'" (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003))).

## III.   CONCLUSION

For the reasons stated above, the Court DENIES WITHOUT PREJUDICE Mr. Santos Menezes's petition.  ECF No. 1.  The Court will permit Mr. Santos Menezes to file an amended petition if he can show that DHS has failed to comply with the procedures enumerated in 8 C.F.R. § 241.8 and 8 C.F.R. § 208.31.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

June 4, 2026